UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| DION ERIC SAVAGE, | ) | |
| aka DION E. X-SAVAGE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 11-11-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| S. SIMS, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| Defendants. | ) | **ORDER** |

\*\*\*\*  \*\*\*\*  \*\*\*\*  \*\*\*\*

Defendants Sondra Sims, Tom Long, James Huff, and Arron Larsen have filed a motion to dismiss the complaint, or in the alternative for summary judgment against the Plaintiff, Dion Eric Savage. [R. 28.]  Savage, in addition to responding to Defendants' motion [R. 35, 36], has filed several motions for discovery [R. 42, 50, 57] and a motion to unseal documents filed in this case [R. 51].  For the reasons set forth below, this case will be dismissed and summary judgment entered in favor of the Defendants.

**I.**

In his complaint, Savage contends that in October 2009 he sent an Inmate Request to Staff commonly referred to as a "cop-out" to the warden complaining that counselor Sondra Sims was not present in her office during her scheduled work hours, and alleged that she was discriminating against African-American inmates by transferring them to different cells to accommodate Caucasian inmates. [R. 2.]  Savage further alleges that on December 30, 2009, he was confronted by Special Investigative Agent ("SIA") James Huff and Lieutenant Arron Larsen

1

shortly after he finished removing trash from an area near Sims's office. [R. 2.]  They indicated concern that Savage was inappropriately following Sims' movements based on his presence outside her office and the detailed information he set forth in his "cop-out" to the warden. [*Id.*]  On December 31, 2009, pending further investigation, Savage was placed in the Special Housing Unit ("SHU").

On January 14, 2010, Huff returned to the SHU and advised Savage that his review of security videotapes did not indicate that Savage had violated prison rules, and that he would release Savage back into the general population. [R. 2.]  When released, Savage was transferred to a different cell in another portion of the prison, and was no longer employed as an orderly. [*Id.*]  Savage further alleges that after his release from segregation he asked Huff to provide him with a copy of the informal grievance he had originally sent to the warden. [*Id.*]  While Huff initially stated that he would do so, he later told Savage that he no longer had a copy of it. [*Id.*]

Savage also alleges that on a separate occasion, another inmate who was intoxicated walked up to Sims and told her that he loved her. [*Id.*]  According to Savage, this inmate was placed in the SHU for four days for being intoxicated, but was not disciplined further. [*Id.*]

In his complaint, Savage contends that Huff and Larsen were predisposed to assume his guilt, and should have reviewed security videotapes before placing him in segregation rather than afterward. [*Id.*]  He further alleges that the defendants' actions were taken in retaliation for the grievance he filed regarding Sims in violation of his rights under the First Amendment. [*Id.*]

In lieu of filing an answer to the complaint, the defendants filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12, or in the alternative, for summary judgment pursuant to Rule 56. [R. 30.]  In their motion, the defendants contend that their concern about Savage's behavior began before the December 30, 2009 incident about which he complains. [*Id.*]

2

The defendants note that in 2008 Savage filed a grievance against a different officer, Case Manager Jill Tucker, for not being on time to escort him to review his Central File. [*Id.*] Savage further complained that she told him that he needed to obtain an informal grievance form to complain about her conduct from another officer, an act he characterized as an effort to prevent him from exercising his right to file administrative remedies. [*Id.*]  He later filed a second grievance alleging that she had confiscated his chair and radio in retaliation for his filing a grievance against her.[1] [*Id.*; 30-1.]

Three months prior to the events Savage described in his complaint, Sims sent an e-mail to SIA Huff indicating her belief that Savage had taken actions "full of sexual innuendo" towards her, such as asking "if he could be [her] personal orderly," an action she entered into the unit's incident log. [R. 30-4.]  In his response, Huff inquired further about the incident, and stated he would talk to Sims. [R. 30.]  Huff later spoke to Savage individually, explained his concerns, and advised Savage that he should only go to see Sims when he had a legitimate reason to speak to

---

[1]   The Court's description of the facts is derived from several documents, some of which are currently filed under seal.  On June 16, 2011, Savage objected to the defendants' request to file records containing information about him into the record on the grounds that any such disclosure would violate the Privacy Act, 5 U.S.C. § 552a, and any doctor-patient privilege. [R. 25.] Consistent with the Court's Order [R. 26], the defendants moved to file their dispositive motion and its attachments under seal in order to preserve the confidentiality and any privileges applicable to the documents and any statements regarding the plaintiff contained in them. [R. 29, 31, 45.]  The Court granted those motions. [R. 33, 34, 47.]

Savage has now moved to unseal all documents and expressly waived any applicable privileges in order to make these documents a matter of public record. [R. 51.]  The defendants do not object to the request. [R. 56.] The Court will therefore grant Savage's motion and order the documents unsealed.  Accordingly, the requirement that the defendants consider the potential application of the doctor-patient privilege before filing medical records relevant to Savage's claims into the record [R. 26] no longer applies.

her. [R. 30-7.]  In an August 12, 2009, e-mail, Sims and Huff discussed the matter again, and Sims noted that she had not seen Savage since the prior incident. [*Id.*]

After Savage submitted his October 22, 2009, "cop-out" to the warden, Sims reviewed it and became concerned that he had gathered detailed information about when she arrived at her office, when she departed, and her movements during the day. [R. 30.]  Savage also requested that Sims's office be moved to another part of the unit where he and other inmates would have unfettered access to it  [*Id.*]  On November 10, 2009, Sims sent another e-mail to Huff expressing concern for her safety and her perception that Savage was "trying to get revenge against [her]" for her prior discussions with Huff. [*Id.*]  Huff found Savage's detailed knowledge of Sims's work routine and desire to have more ready access to her a significant source of concern, but did not believe it was sufficient at that juncture to warrant disciplinary action. [*Id.*]

On December 3, 2009, Sims notified Huff that she had encountered Savage, who had "started walking towards [her] while staring [her] down and muttering something [she] could not hear." [R. 30-4.]  Sims expressed her concern to Huff that Savage might attempt to hurt her. [*Id.*]  Finally, on December 30, 2009, Sims advised Huff that Savage had been staring at her while she was cleaning an office with two orderlies. [*Id.*]  She again expressed her fear that Savage might attempt to hurt her if he had the opportunity. [*Id.*]  Huff directed Sims to prepare a memorandum setting forth the facts which provided the basis for her concern. [*Id.*]  At that point, Huff advised Sims that she should provide more specific information because he was in the process of conducting a threat assessment for Savage. [R. 30-7.]

On December 30, 2009, Huff began his threat assessment by interviewing Savage personally, who denied that he was stalking Sims. [*Id.*]  Huff determined that further investigation was warranted, and placed Savage in administrative segregation in the SHU

pending the outcome of his investigation. [*Id.*]  On December 31, 2009, he reviewed the videotape of the unit which showed Savage's actions near Sims's office on that day, but he did not find it conclusive. [*Id.*]  He also reviewed a statement provided by case manager Tucker regarding her experiences with Savage. [R. 30-10.]  Huff ultimately concluded that the situation did not warrant either disciplinary charges or a recommendation that Savage be transferred to another institution. [R. 30-7.]  Yet, because Savage appeared to be "paying way too much attention to a particular female staff member," Huff recommended that he be moved to a different part of the prison where he would not come into contact with Sims. [*Id.*]

In light of this history, the defendants contend that Savage's retaliation claim is without merit because his initial grievance was frivolous; that his transfer to another unit and cell was not an "adverse" action; and that they temporarily detained him to investigate a longstanding concern about his recurring behavior towards Sims, rather than in retaliation for his filing a "cop-out." [R. 35.]

## II.

## A.

The defendants' motion to dismiss the complaint must be treated as a motion for summary judgment under Rule 56 because they have attached documents and affidavits extrinsic to the pleadings in support of it. Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). A motion under Rule 56 challenges the viability of another party's claim by asserting that at least one essential element of that claim is not supported by legally-sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).  If the moving party demonstrates that there is no genuine dispute as to any material fact

and that she is entitled to a judgment as a matter of law, she is entitled to summary judgment. *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992).

The moving party does not need her own evidence to support this assertion, but need only point to the absence of evidence to support the claim. *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005). The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrates that a factual question remain for trial. *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003); *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993) ("A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts.").

The court reviews all of the evidence presented by the parties in a light most favorable to the responding party, with the benefit of any reasonable factual inferences which can be drawn in his favor. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). If the applicable substantive law requires the responding party to meet a higher burden of proof, his evidence must be sufficient to sustain a jury's verdict in his favor in light of that heightened burden of proof at trial. *Harvey v. Hollenback*, 113 F.3d 639, 642 (6th Cir. 1997); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1444 (6th Cir. 1993).

**B.**

Before applying these standards to Savage's claims, however, the Court must determine whether consideration of the defendants' motion is premature until Savage receives the discovery he has requested. Savage has filed three separate motions for discovery. [R. 42, 50, 57.] As a

6

threshold matter, the defendants are correct that their motion to dismiss under Rule 12 does not constitute an "answer" to the complaint within the meaning of Rule 7, and that the Court has not yet entered a scheduling order permitting discovery under Rules 16 and 26. [R. 43.]  To the extent that Savage seeks the full range of discovery to which he would otherwise be entitled once discovery is ordered [R. 42], that request will be denied.

In subsequent motions for discovery, Savage has clarified that he seeks discovery in order to respond to the defendants' motion for summary judgment. [R. 50, 57.]  Savage does not identify the discovery he seeks in those motions, but he does reference his other requests for discovery.  On September 29, 2011, and October 5, 2011, Savage sent letters to defendants' counsel requesting that they produce copies of a vast array of documents, including a copy of the cop-out he sent to the warden, incident reports issued by Sims against any other inmate, any inmate grievance filed against any of the defendants, log books showing the names of other inmates housed in the SHU when Savage resided there, lawsuits filed against any of the defendants, Sims's maiden name and the date she got married, a weather report for January 2010, employee disciplinary reports or investigations against any of the defendants, the name of his cellmate when he was housed in the SHU, Sims's time cards for June 2009 through January 2010, surveillance videotapes of the unit where Savage resided from July 2009 to January 2010, e-mails and documents between any of the defendants and between Sims and her husband regarding Savage or their investigation of him. [R. 40, 41.]  Of these, Savage expresses a particular interest in obtaining the name of the intoxicated inmate who told Sims that he loved her and any incident report issued arising out of that event. [R. 50, 57.]

When a plaintiff facing a motion for summary judgment believes that discovery is needed in order to respond appropriately to the motion, he or she must "show[] by affidavit or

7

declaration that, for specified reasons, it cannot present facts essential to justify its opposition ..." Fed. R. Civ. P. 56(d).  To invoke Rule 56(d) the nonmovant must file an affidavit in response to the summary judgment motion which details the discovery needed and demonstrates specific reasons why the nonmovant cannot oppose the summary judgment motion without it. *United States v. One Harrington & Richardson Rifle*, 378 F.3d 533, 535 (6th Cir. 2004).  General and conclusory assertions that more discovery is needed are not enough; the affidavit must be detailed and specific. *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004); *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003) (nebulous assertions of additional time for discovery are insufficient).  Not only must the nonmovant explain why the facts it seeks are material, it must explain why it has not previously discovered the information.  *Toms v. Taft*, 338 F.3d 519, 523-24 (6th Cir. 2003) (more time for discovery not warranted where party sought information that was not relevant to dispositive question); *Ball*, 385 F.3d at 720; *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000) ("Beyond the procedural requirement of filing an affidavit, [Rule 56(d)] has been interpreted as requiring that a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information.").

In their motion to dismiss, the defendants contend that Savage's October 2009 grievance regarding Sims's work habits was frivolous, that being transferred to another cell is routine and does not have sufficiently negative consequences to constitute an "adverse" action. [R. 30.] They further contend that placing him in segregation was done not to retaliate against him but simply to house him in a place that would maintain the safety of staff pending completion of their investigation. [*Id.*]  Savage does not explain, nor is it self-evident, how this separate incident involving an intoxicated inmate is germane to any of these legal inquiries.  The focus of

8

a retaliation claim is upon the actions of correctional officers in response to constitutionally protected activity with respect to a particular plaintiff, not with respect to other inmates not similarly situated.  The defendants have filed extensive documentation regarding these events - including the "cop-out" that Savage has requested - into the record.  Most of the information sought by Savage is not relevant to his case generally, let alone responsive to the specific issues raised by the defendants in their motion.  Absent a more particularized showing of relevance of the discovery requested to respond to the precise elements raised by the defendants in their motion, Savage has failed to demonstrate the necessity for the relief requested, and it will be denied.  *See Emmons v. McLaughlin*, 874 F.2d 351, 358 (6th Cir. 1989) (where requesting parties total lack of specificity failed to show that discovery would produce any evidence relevant to motion, district court's refusal to permit discovery to proceed was not an abuse of discretion).

## C.

To prevail on a First Amendment retaliation claim, a plaintiff must demonstrate that:

1.  he engaged in conduct protected by the Constitution;

2.  the defendant took action against him that is capable of deterring a reasonable person from engaging in that conduct in the future; and

3.   the defendant's action was at least partially motivated by the plaintiff's protected conduct.

*Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010).  The defendants contend that Savage's claim fails with respect to each of these required elements.

With respect to the second element, the defendants contend that Savage's two-week placement in administrative segregation cannot constitute an adverse action because it was not capable of deterring a reasonable person from engaging in protected conduct. [R. 30.]  However, based on the record before it, the Court cannot conclude that this element fails as a matter of law.

9

Placement in administrative segregation can satisfy the adverse action requirement, dependent in part upon the nature of the restrictions imposed by that environment relative to prisoners in the general population. *Hill*, 630 F.3d at 474; *Green v. Caruso*, 2011 WL 1113392, at *8-9 (W.D. Mich. 2011). Without further information in the record, the Court cannot conclusively determine this issue.

With respect to the first element, the defendants argue that Savage's conduct was not protected because the underlying grievance was frivolous. [R. 30.] In his October 22, 2009, cop-out, Savage questioned why Sims's office was located in the Unit Team area instead of in the unit area where the counselor's office is located. [R. 46-1.] He also complained that the Open House was not open at the times posted in the unit. [*Id.*] Finally, Savage noted his belief that prison staff would retaliate against him for filing the cop-out. [*Id.*] Defendants argue that Savage's cop-out was frivolous because he had "no business setting a prison employee's work hours or determining the location of the employee's office." [R. 30.]

Generally "[a]n inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000). This conduct, however, is not protected if the underlying grievance is frivolous. *Lewis v. Casey*, 518 U.S. 343, 353 n.3 (1996); *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007). The Court agrees that under the circumstances Savage's cop-out was frivolous. Yet, it is not frivolous because Savage complained about Sims's work hours or the location of her office. Those complaints were about the availability of Sims to perform her job duties, matters that are fairly within the realm of Savage's concern if he is unable to obtain in conformity with prison rules the assistance he desired. Savage's cop-out is frivolous because he does not complain that he was unable to speak with Sims or another prison officer to address his concerns. Sims and

Huff have both filed declarations explaining that Savage came to Sims's office on numerous occasions simply to say hello, and then left without seeking assistance within the scope of Sims's professional responsibilities. [R. 30-4, 30-7.]  Savage has not contradicted these assertions, or contended in any way that he was unable to obtain needed assistance regarding conduct he complained of in his cop-out.  While his cop-out complained of minor variations in a prison official's work hours or the time Open House was held, he made no allegation that he was personally prejudiced as a result, and the evidence of record establishes that he was able to speak with Sims when he wished to do so.  Under such circumstances, Savage's cop-out was frivolous, *Antonelli v. Rios*, 2009 WL 790171, at *6-7 (E.D. Ky. 2009), and his conduct in filing it was not protected by the First Amendment.

Even if this were not the case, the detailed information provided by the defendants demonstrates that their decision to temporarily detain Savage pending further investigation was based on their legitimate concern for the safety of a female staff officer, and Savage cannot demonstrate a retaliatory intent on their part.  The third element of a retaliation claim requires proof that the defendant took adverse action based, in whole or in part, upon a desire to retaliate against the plaintiff for his protected activity.  *Siggers–El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005).  The plaintiff must demonstrate that the prison official subjectively intended to retaliate against him when taking the action in question.  *Hill*, 630 F.3d at 467.  He may satisfy the required inference of retaliatory intent with circumstantial evidence, *Holzemer v. City of Memphis*, 621 F.3d 512, 525-26 (6th Cir. 2010), such as by demonstrating that the retaliatory act occurred shortly after he engaged in protected conduct, or showing that prison officials treated a similarly-situated individual differently.  *Thaddeus–X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999).

11

Savage points to the unidentified inmate who, while intoxicated, told Sims that he loved her, and alleges that he was only placed in the SHU for four days.  Defendants correctly note that this inmate was not similarly situated to Savage, who had an extended history of conduct towards Sims, unlike the isolated incident involving this other inmate.  Further, Savage was not placed in the SHU until two months after he filed his cop-out against Sims, and not until four or five months after his initial incident with her.  If temporal proximity provides an inference here, it indicates that the events are not causally related.

Even if Savage had satisfied his preliminary obligation to show that his October 2009 cop-out was a substantial or motivating factor in his administrative detention over two months later, the defendants can rebut any inference of retaliatory intent by showing that he would have been placed in the SHU pending further investigation even if Savage had not filed the cop-out. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001).  Sims had expressed her concerns regarding Savage's conduct towards here in an e-mail to Huff on July 22, 2009, which prompted him to speak personally to Savage regarding appropriate conduct towards staff. [R. 30-7.]  While Sims told Huff on August 12, 2009, that she had not seen Savage since then, Huff cautioned her that Savage might return to his prior behavior. [*Id*.]  Sims's fears were renewed when she received his October 22, 2009, cop-out detailing her arrival and departure times from her office, and by November 10, 2009, Huff indicated his belief that Savage's focus upon Sims was cause for concern.  On December 3, 2009, Sims again communicated to Huff that Savage had walked towards her, staring at her and muttering something that she could not hear, and expressing fear for her safety. [R. 30-4.]  Sims further advised Huff on December 30, 2009, that Savage had been staring at her while cleaning an office, which then prompted a personal interview with Savage and the order of detention. [R. 30-7.]  This extensive history between Savage and Sims

12

establishes that the decision to place Savage in administrative custody pending further investigation was the result of longstanding concerns regarding his behavior towards Savage, which whether excessively friendly or hostile, supports Huff's conclusion that Savage was inappropriately preoccupied with Sims's activities. It is evident therefore that Huff would have placed Savage in administrative segregation pending completion of his investigation, a step routinely taken in such matters, even if Savage had never filed his cop-out. *Manning v. Bolden*, 102 Fed. Appx. 904, 905 (6th Cir. 2004) ("[i]f the plaintiff establishes all three elements, the defendants may nonetheless prevail on summary judgment by showing that their actions would not have been different absent plaintiff's protected conduct" (citing *Thaddeus-X*, 174 F.3d at 400 (6th Cir. 1999)). Because this evidence demonstrates that Savage's temporary detention was the consequence of a legitimate concern for the safety of a female staff member, the plaintiff cannot establish a retaliatory motive for the defendants' conduct, and summary judgment is appropriate.

III.

Accordingly, **IT IS ORDERED** that:

1.      Savage's motion to unseal all documents currently under seal [R. 51] is **GRANTED**;

2.      Defendants' motion for leave to seal a document [R. 52] is **DENIED AS MOOT**;

3.      The Clerk of the Court shall **UNSEAL** all documents currently under seal, including [R. 30, 32, 46, 48, 53];

4.      Savage's motions for discovery prior to resolution of defendants' motion to dismiss, or in the alternative, for summary judgment [R. 42, 50, 57] are **DENIED**;

13

5.      Defendants' motion to dismiss, or in the alternative, for summary judgment [R. 28] is **GRANTED**; and

6.      The Court will enter a judgment contemporaneous to this Order.

This 30th day of March, 2012.



Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**

14